IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 24-167 |
| | : | |
| KEVIN HOLLOWAY | : | |
| MARK SCOTT | : | |
| LINTON MATHIS | : | |
| ATIBA WICKER | : | |
| KENNETH TUCKER | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez** **September 2, 2026**

The Government moves for an order to admit eight categories of evidence in its case-in-chief under Federal Rule of Evidence 404(b). *See* Government's Mot. in Lim., ECF No. 97. All Defendants oppose the motion. *See* ECF Nos. 118, 121, 134, 127, 129, 132.

Because the Government has satisfied the standard for admission of Rule 404(b) evidence as to some, but not all, of the categories of evidence it seeks to admit, the motion will be granted in part and denied in part. The motion will be denied as to evidence in category one regarding a drug trafficking operation from 20 years ago, category two regarding multiple robberies that occurred in 1999, category four regarding money seized at Holloway's residence, category seven regarding Wicker's placement in a halfway house, and category eight regarding an arson committed in 1993. The motion will be granted in part as to evidence in category three regarding Holloway's debt and category six regarding Wicker's knowledge of Taylor's cocaine supply. The motion will be granted as to evidence in category five regarding money seized by DEA agents the day prior to the kidnapping.

**BACKGROUND**

Defendants are each charged with kidnapping resulting in death and aiding and abetting, in violation of 18 U.S.C. §§ 1201(a)(1) and (2). The Superseding Indictment alleges the Defendants kidnapped Shamari Taylor in Philadelphia to steal cocaine and drug proceeds from him, and, in carrying out their plan, they murdered Taylor on August 26, 2006.[1]

**LEGAL STANDARD**

Federal Rule of Evidence 404(b) prohibits the introduction of "[e]vidence of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence may be admissible, however, for another purposes, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b)(2).

The Supreme Court has set out a four-part test for the admission of Rule 404(b) evidence: "(1) the evidence must have a proper purpose; (2) it must be relevant; (3) its probative value must outweigh its potential for unfair prejudice; and (4) the court must charge the jury to consider the evidence only for the limited purposes for which it is admitted." *See United States v. Givan*, 320 F.3d 452, 460 (3d Cir. 2003) (citing *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988)). Rule 404(b) is "a rule of general exclusion, and carries with it 'no presumption of admissibility.'" *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014) (quoting 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 4:28, at 731 (4th ed. 2013)). The Rule "reflects the

[1] Although Defendants were originally charged with conspiracy to commit kidnapping resulting in death as well as the substantive kidnapping offense, the Superseding Indictment dropped the conspiracy charge.

revered and longstanding policy that, under our system of justice, an accused is tried for *what* he did, not *who* he is." *Id.* (emphasis in original).

For evidence to be admissible under Rule 404(b), the proponent must identify a proper purpose that is "at issue" in the case. *See Caldwell*, 760 F.3d at 276. Proper evidentiary purposes include, but are not limited to, "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). A purpose is "at issue," if it is within the "material issues and facts the government must prove to obtain a conviction." *Id.* (quoting *United States v. Sampson,* 980 F.2d 883, 888 (3d Cir. 1992)). To obtain a conviction for kidnapping resulting death, the offense charged here, the Government must prove: (1) the defendant seized, confined, inveigled, decoyed, kidnapping, abducted or carried away the victim; (2) the defendant held the victim for ransom or reward and property belonging to the victim; (3) the defendant used the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense; (4) the defendant acted unlawfully, knowingly, and willfully; and (5) the defendant's act resulted in the death of the victim. *See* Sand's Modern Federal Jury Instructions-Criminal P. 42.01 (2018); *Chatwin v. United States,* 326 U.S. 455, 461-64 (1946).

The proponent must then demonstrate that the evidence is relevant to the offered purpose. The Third Circuit has cautioned "evidence that may be relevant for some purposes may be irrelevant for the purpose for which it is offered." *Id.* at 277 (citing *United States v. Morley,* 199 F.3d 129, 133 (3d Cir. 1999)). The proponent "must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged." *Morley*, 199 F.3d at 133; *United States v. Himelwright*, 42 F.3d 777, 782 (3d Cir. 1994). The essential limitation is that the evidence must not simply show

propensity—the inference that the defendant committed a crime before and therefore must have done so again.

The third step requires the district court to evaluate the evidence pursuant to Rule 403. Under this Rule, the court may exclude relevant evidence if the probative value is substantially outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The court must determine if the evidence is sufficiently probative to outweigh the inherent prejudice of prior bad acts evidence. *See Caldwell*, 760 F.3d at 277. Evidence that is offered for a permitted purpose and is relevant to that purpose may still be excluded at step three.

Lastly, if the evidence is offered for a permissible purpose, is relevant to that purpose, and is admissible under Rule 403, then the court may admit it with a limiting instruction to the jury to consider the evidence only for the permissible purpose.

**DISCUSSION**

The first category of evidence the Government seeks to introduce is the Defendants Kevin Holloway, Mark Scott, and Linton Mathis's involvement in a cocaine trafficking operation from 2004 through 2006. The Government seeks to present testimony from Co-conspirator #1 about his participation in a cross-country drug trafficking operation involving Holloway, Mathis, and Scott back in 2004. ECF No. 97 at 11. Additionally, Person #4 will testify about his knowledge of the trio's cocaine supply. *Id.* at 12. The proffered purpose is to establish background information for the case. *Id.* at 21. The Government contends this testimony will demonstrate (1) the history of Holloway, Scott and Mathis's relationship, (2) their collective awareness that the business was failing, and (3) their willingness to engage in "dangerous, risky, and brazen crime together." *Id.* at 33-34.

Holloway and Mathis challenge the introduction of uncharged crimes from 20 years ago as lacking any legitimate probative value. Instead, they claim this evidence is an attempt to paint them as career drug traffickers who, "because of this uncharged criminal activity, are more likely to have 'engage[d] in dangerous, risky and brazen crime.'" ECF No. 132 at 12. They correctly state whether they distributed drugs in the past is irrelevant to demonstrating if they acted together to commit the alleged kidnapping and homicide. ECF No. 121 at 21.

The Government has failed to demonstrate a proper purpose for the category one evidence. The Government argues the evidence is admissible to establish the "circumstances surrounding how and why they sought to engage in the plot," ECF No. 97 at 34, pointing to a series of cases in which evidence of a criminal association between a witness and the Defendant was admitted. *See United States v. Mathis*, 264 F.3d 321, 326 (3d Cir. 2001) (upholding a district court's decision to admit evidence of previous uncharged bank robberies under 404(b) to demonstrate the witness's familiarity with the defendant and the group's *modus operandi*); *United States v. Butch*, 256 F.3d 171, 176 (3d Cir. 2001) (affirming district court's finding that evidence demonstrating the relationship between co-conspirators and their participation in similar crimes was a proper purpose under Rule 404(b) and was not unduly prejudicial under Rule 403); *United States v. Lane*, 342 F. App'x 825, 827 (3d Cir. 2009) (finding evidence of a prior robbery was relevant to establishing preparation and plan for the charged robbery, as well as to establishing the relationship between co-defendants). In all these cases, however, the Rule 404(b) evidence was useful for establishing identity, plan, preparation, or *modus operandi* relating to the crime at issue or was directly relevant to proving a conspiracy charge. There is no longer a conspiracy charge in this case. The Court fails to see how an uncharged drug trafficking offense committed two years prior to the kidnapping in this case provides necessary background for the jury. Instead, the events attempt to paint the

Defendants as career criminals, and encourage conviction based on bad character. The Government has failed to demonstrate how this testimony fits into a "chain of logical inferences, no link of which can be the inference that because the defendant committed drug offenses before, he therefore is more likely to have committed this one." *Sampson,* 980 F.2d at 887. Category one testimony regarding the alleged cross-country drug operation is not relevant to a proper purpose and is inadmissible.

Further, even if steps one and two were satisfied, the evidence would be inadmissible under Rule 403. The evidence is highly prejudicial to the Defendants, painting them as criminals running a cross-country drug trafficking operation. It will tend to confuse the jury as to the actual issue: whether these Defendants committed the charged kidnapping and murder. Lastly, the evidence is minimally probative of their guilt in the charged kidnapping. The Court will deny the motion as to category one.

The second category of evidence is two robberies that occurred in 1999. The Government seeks to present testimony from Person #4 about two robberies they claim to have committed with Holloway in 1999. ECF No. 97 at 12. The testimony includes details of the two events where Holloway and Person #4 used guns to rob drug dealers, one of which involved fatalities. *Id.* at 13-14. The Government seeks to establish Holloway's *modus operandi*. *Id.* at 21.

Holloway argues these robberies are nothing more than propensity evidence prohibited by Rule 404(b), given the significant differences between the 1999 robberies and the kidnapping in this case. For instance, the 1999 robberies both involved the use of guns whereas the kidnapping did not. And the kidnapping involved the elaborate impersonation of police officers and the torture of the victim to extract information about his drug stash whereas the robberies did not involve any of these methods. The similarities identified by the Government are overly general including that

the crimes targeted drug dealers, involved multiple meetings, and multiple people. This is insufficient to demonstrate *modus operandi*. *Cf. United States v. Taylor,* 379 F. App'x 240, 243 (3d Cir. 2010) (affirming the district court's finding that similarities between the robbers' dress, method of obtaining the money, use of firearms, number of robbers, and use of stolen getaway cars was sufficient to demonstrate *modus operandi*). As such, evidence of the 1999 robberies is not admissible for this purpose.

Further, the introduction of multiple uncharged robberies risks confusing the jury as to the issue in *this* case and is highly prejudicial to Holloway. Admitting two previous uncharged robberies would create a mini trial, forcing the jury to determine whether the alleged robberies occurred, if they occurred in the manner described by Person #4, and how these distinct crimes that occurred seven years prior to the charged kidnapping relate to the present trial. The Court will deny the motion as to category two.

The third category of evidence is the existence of a large debt that Holloway owed Person #4. The Government seeks to present testimony by Person #4 showing Holloway owed around $300,000 to him. ECF No. 97 at 15. Person #4 would testify Holloway operated a drug trafficking operation with him during 2003-2004. After Person #4 was arrested, Holloway agreed to set aside $10,000 a month from the operation's profits for Person #4 when he got out of prison. When Person #4 was released, Holloway owed him approximately $300,000. *Id.* The Government plans to use this evidence to establish that Holloway had a motive to carry out the kidnapping of Taylor. *Id.* at 41-44.

Motive is a proper purpose to admit prior bad acts. Fed. R. Evid. 404(b)(2). The Defendants do not contest that the existence of the debt to Person #4 is admissible. ECF No. 121 at 20. However, the details regarding the source of the debt are irrelevant to proving Holloway was

financially motivated to commit the kidnapping. Therefore, the Court will allow the admission of evidence of the debt but will not permit evidence of Holloway and Person #4's drug trafficking operation back in 2004, as already discussed in category one.

The fourth category of evidence is the seizure of a large sum of money from Holloway's residence in 2005. The Government seeks to present testimony from Police Officer James Cullen showing $195,826 in cash was seized during a search of Holloway's residence in 2005. ECF No. 97 at 17. The Government seeks to introduce this on similar grounds as category #3—to show motive for the kidnapping scheme. *Id.* at 22. The Government offers the additional purpose of demonstrating a criminal association between Mathis and Holloway. *Id.*

Both Holloway and Mathis object to the introduction of this evidence. *See* ECF Nos. 121, 132, 134. Holloway argues this event is too remote in time to show a motive for the kidnapping, which did not occur until nearly a year later. He also notes the money was eventually returned to him prior to the kidnapping, undermining the argument that this loss motivated the kidnapping. ECF No. 121 at 10-11. Mathis argues his presence during the police search of the house does not demonstrate a criminal association between him and Holloway. ECF No. 132 at 13-15. Mathis was not in the house when the search occurred. He appeared during the search and was arrested outside of the house. *Id.* Neither he nor Holloway were ever charged, and the Government has not produced evidence that Mathis knew of the money or had any ties to the money that would implicate him in a criminal association with Holloway. *Id.*

Again, motive is a proper purpose for the admission of 404(b) evidence, but the Government fails to explain how money seized almost a year prior to the kidnapping which was ultimately returned to Holloway prior to the kidnapping is relevant to show motive. Additionally, this evidence raises several concerns under Rule 403. First, the evidence is highly prejudicial to

Holloway, painting him as a criminal whose house was searched by the police. Additionally, the background of this search is contested, so the evidence would confuse the issues and distract the jury from the kidnapping charge. Further, the probative value here is low given the timeline and the eventual return of the money, and the evidence is cumulative because the Government will be permitted to introduce evidence of Holloway's debt to demonstrate his financial motives for the kidnapping. The Court will deny the motion as to category four.

The fifth category of evidence is money seized by DEA agents the day before the kidnapping. The Government seeks to present testimony from DEA agents who seized a package containing $101,930 with Holloway's return address on it the day before the kidnapping and testimony from Person #4 that financial losses in California were one reason Holloway did not have the money to repay him. ECF No. 97 at 18. The Government seeks to introduce this on similar grounds as category #3—to show motive for the kidnapping scheme. *Id.* at 45. Holloway argues the evidence is not relevant to motive because the Government has not produced evidence that Holloway knew of the seizure at the time of the kidnapping. ECF No. 121 at 8.

As noted, motive is a proper purpose for the introduction of 404(b) evidence, and unlike the other motive evidence discussed above, this evidence is temporally relevant to demonstrating that Holloway had a financial motive to kidnap Taylor. The category four evidence relates to a seizure of money which occurred a year before the kidnapping and which was also ultimately returned to Holloway before the kidnapping. But the category five money was seized in California by DEA agents the day before the kidnapping, making it a relevant motive in the case.

The argument regarding Holloway's knowledge of the seizure is better suited for trial. Person #4 can testify that Holloway's losses in California were related to his inability to pay back

the debt, and Holloway may attempt to bring out any inconsistencies with the Government's timeline on cross examination. The Court will grant the motion as to category five.

The sixth category of evidence is Wicker's knowledge of Taylor's cocaine supply. The Government seeks to present testimony from Co-conspirator #2 that he and Wicker sold cocaine in 2002-2003, Taylor supplied cocaine to the duo in 2006, and Wicker eventually fell into debt with Taylor. ECF No. 97 at 19. The Government seeks to introduce this evidence to demonstrate that Wicker had knowledge of Taylor's cocaine possession and the opportunity to effectuate the kidnapping with the goal of stealing the cocaine. *Id.* at 23. Additionally, the debt is relevant to Wicker's motive to engage in the kidnapping scheme. *Id.*

The Government has introduced a proper purpose for the category six evidence. Wicker's knowledge of Taylor's drug supply is a permissible purpose for introducing 404(b) evidence. Further, as this Court has explained above, the existence of debt is permissible motive.

Portions of this testimony are relevant to proving the permissible purposes. Unlike the other prior bad acts, which provide background for the Defendants' history of drug trafficking, the allegations that Taylor supplied drugs to Wicker directly relate to the charges in this case. Wicker's knowledge of Taylor's cocaine supply provided the motive for the group to kidnap Taylor and the opportunity to commit the crime by staging a fake drug deal with Taylor. Because Wicker's drug trafficking with Taylor is directly related to the kidnapping, it is more probative and less prejudicial than the introduction of unrelated, uncharged drug crimes. However, the testimony regarding cocaine sales back in 2002-2003 is unrelated to the charges and is not relevant to either Wicker's knowledge of Taylor's cocaine supply or Wicker's motivation to commit the kidnapping. The Court will grant the motion as to the testimony regarding Wicker's drug transactions with Taylor but will deny the motion as to Wicker's general sale of cocaine in 2002-2003.

Testimony regarding Wicker's debt to Taylor would be directly relevant to proving that he had a motive to commit the kidnapping, but Wicker raises a Rule 602 issue. Wicker claims the Government witness does not have direct knowledge of the debt Wicker owed to Taylor. ECF No. 129 at 11; Oral Arg. Audio at 02:05:07 – 02:07:15, ECF No. 163. The Government's motion does not explain how the Co-conspirator learned of the debt. ECF No. 97 at 19. Therefore, the Court will deny the motion without prejudice as to the debt unless the Government can provide a proper foundation for it at trial.

The seventh category of evidence is Wicker's parole status at the time of the kidnapping, including his residence in a halfway house with a mandatory curfew, and his later incarceration with Co-conspirator #2. ECF No. 97 at 19-20. The Government seeks to introduce this evidence to demonstrate Wicker's knowledge and intent to engage in the kidnapping. *Id.* at 50. Co-conspirator #2 will testify he communicated with Wicker during the kidnapping, and Co-Conspirator #1 will testify Wicker had been serving as a middleman for Taylor's drug trafficking operation at the time. *Id.* at 19-20.

The Government cites several cases that are critically different from the facts presented here. First, the Government points to *United States v. Cruz* to demonstrate that parole status is relevant to explaining a defendant's absence at the crime scene. *Id.* at 50. In *Cruz,* the Government introduced a defendant's parole status to demonstrate why the defendant would engage in a conspiracy to sell drugs, using others to lower his risk of police detection. 326 F.3d 392, 394 (3d Cir. 2003). That reasoning in inapplicable in this case. The Government is not arguing that Wicker conspired to commit the kidnapping and used others to lower his risk. Further, the Government does not need to explain why Wicker was not present during the crime, just what his role was in it.

The Government argues this evidence is critical to countering Wicker's defense that he was not present the night of the kidnapping, and in fact could not have been present because he had a curfew. However, unless Wicker introduces his parole status himself, it is unduly prejudicial and unrelated to the Government's proffered purpose of demonstrating his knowledge, opportunity, and intent.

The Government also cites to *United States v. Williams* to show evidence of Wicker's incarceration with Co-conspirator #2 after the kidnapping is admissible to demonstrate how the two were in the position to have the conversation about the subsequent robbery. In *Williams*, the defendant's incarceration was admissible to demonstrate the relationship the defendant developed with the co-conspirator while incarcerated as they planned their murder-for-hire conspiracy. 647 F. App'x 144, 148 (3d Cir. 2016). In this case, Wicker and the Co-conspirator knew each other prior to being incarcerated because they allegedly committed the kidnapping together. Their subsequent incarceration does not help prove their relationship at the time of the kidnapping or Co-conspirator #2's knowledge of the events. This testimony is relevant to the home invasion robbery which occurred after the kidnapping, and which is not relevant to proving the kidnapping charge. The court will deny the motion as to category seven.

The last category of evidence is a prior arson committed by Mathis and Tuck in 1993. ECF No. 97 at 20. The Government seeks to introduce this to demonstrate that Mathis and Tuck have a shared history of committing crimes together. *Id.* at 52. The Government does not intend to introduce the specifics of the crimes, just that they have previously engaged in illegal conduct together. *Id.*

This is the definition of a propensity inference, because Mathis and Tuck committed an unrelated crime nearly 13 years prior to the kidnapping, they are more likely to have committed the kidnapping together. The Court will deny the motion as to category eight.

**CONCLUSION**

Because the Government has satisfied the standard for admission of evidence under Rule 404(b) as to all or part of the evidence in categories three, five, and eight, the Motion in Limine to Admit evidence under Federal Rule of Evidence 404(b) will be GRANTED as to category five regarding money seized by DEA agents the day prior to the kidnapping and GRANTED in part as to category three regarding Holloway's debt and category six regarding Wicker's knowledge of Taylor's cocaine supply. The Motion will be DENIED as to evidence in category one regarding a drug trafficking operation from 20 years ago, category two regarding multiple robberies that occurred in 1999, category four regarding money seized at Holloway's residence, category seven regarding Wicker's placement in a halfway house, and category eight regarding an arson committed in 1993. An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.